**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SAMUEL LOMACK, JR.**

      **Petitioner,**

      **v.**

**WARDEN, MADISON
CORRECTIONAL INSTITUTION,**

      **Respondent.**

      **CASE NO. 2:13-CV-1016
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition as amended, Respondent's *Motion to Dismiss*, Petitioner's *Response* and *Exhibit* in support, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss,* Doc. No. 6, be **GRANTED** and that this action be **DISMISSED**.

This action involves Petitioner's underlying criminal convictions after a jury trial in the Licking County, Ohio Court of Common Pleas on trafficking in hydrocodone in excess of the bulk amount within the vicinity of a juvenile. *See State v. Lomack*, No. 2012-CA-32, 2013 WL 53738, at *1 (Ohio App. 5th Dist. Jan. 2, 2013). Petitioner filed a timely appeal from his conviction to the state appellate court, asserting as follows:

> I.THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN THE COURT GRANTED THE STATE OF OHIO'S JUNE 6, 2011 MOTION TO AMEND THE INDICTMENT.
>
> II.THE COURT COMMITTED A REVERSIBLE ERROR BY NOT PROVIDING MR. LOMACK AN OPPORTUNITY TO

> RESPOND TO THE STATE'S MOTION TO AMEND THE INDICTMENT.
>
> III. THE TRIAL COURT COMMITTED A PREJUDICIAL ERROR IN DENYING DEFENDANT–APPELLANT'S MOTION TO SUPPRESS REGARDING DEFENDANT'S STATEMENTS MADE TO AUTHORITIES AT THE SCENE OF THE INCIDENT.
>
> IV. DEFENDANT–APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*Id*. at *2. On January 2, 2013, the appellate court affirmed the judgment of the trial court. *Id*. On September 4, 2013, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Lomack*, 136 Ohio St.3d 1476 (Ohio 2013).

On March 5, 2013, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He maintained therein that he had been denied effective assistance of appellate counsel because his appellate attorney failed to raise a claim of ineffective assistance of trial counsel based on his trial attorney's failure to assert a claim under *Batson v. Kentucky,* 476 U.S. 79 (1986), and a claim regarding trial counsel's failure to subpoena a video tape and his co-defendant. *See Exhibit 17, PageID# 195*. On April 26, 2013, the appellate court denied Petitioner's Rule 26(B) application. *Exhibit 18 to Motion to Dismiss*.[1] Petitioner raised these same claims on appeal to the Ohio Supreme Court. *See Exhibit 20 to Motion to Dismiss*. On September 4, 2013, the Ohio Supreme Court declined jurisdiction to accept the appeal. *Exhibit 21 to Motion to Dismiss*.

On October 11, 2013, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises the same claims herein that he raised in the Ohio

---

[1] Petitioner additionally pursued a motion for judicial release which is not relevant to this action. *See Exhibits 22, 23 to Motion to Dismiss.*

courts in Rule 26(B) proceedings. It is the position of the Respondent that this action must be dismissed, as Petitioner has procedurally defaulted all of the claims he presents for review.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If he can no longer present his claims to a state court, he has waived them for federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 (1977).

In the Sixth Circuit, the Court considers the following to determine whether a federal habeas claim is precluded because of a petitioner's failure to observe a state procedural rule: "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the Court must determine whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule,

petitioner must demonstrate cause for his failure to follow the State's procedural rule as well as actual prejudice from the alleged constitutional error. *Id*.

Respondent contends that Petitioner has waived all of the claims he presents for review, because he first presented them in his application to reopen the appeal pursuant to Ohio Appellate Rule 26(B), wherein only claims of ineffective assistance of appellate counsel may properly be addressed. The record reflects, however, that Petitioner does assert the denial of effective assistance of appellate counsel on the same grounds he raised in Rule 26(B) proceedings. Petitioner clarifies in his Response that he is raising claims of ineffective assistance of appellate counsel. He raised these claims in a timely appeal to the Ohio Supreme Court. This Court therefore will likewise address these claims here.

## MERITS

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, ––– U.S. ––––, ––––, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

> Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts.

*Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit recently explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent

5

>> to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, –––U.S. –––, –––, 131 S.Ct. 1388, 1398 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and *Lockyer v. Andrade,* 538 U.S. 63, 76 (2003)); *see also Harrington*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as " 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 131 S.Ct. at 1398. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399.

**Claim One**

In claim one, Petitioner asserts he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim under *Batson v. Kentucky* or a claim that trial counsel performed in a constitutionally ineffective manner by failing to raise the issue. The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant maintains he received ineffective assistance of appellate counsel on direct appeal. The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668. . . (1984). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
>
> First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudice[d] by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the *Strickland* test to all claims of ineffective assistance of counsel, either trial counsel or appellate counsel. . . .
>
> Appellant bears the burden of establishing there is a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel. . . .
>
> Appellant contends that his appellate counsel, on direct appeal, was ineffective for failing to raise. . . [the] failure of trial counsel to raise that the trial court failed to conduct a proper constitutional analysis as outlined in *Batson v. Kentucky*, in determining that the state was not racially motivated in excluding an African-American from the jury through the use of peremptory challenges[.]
>
> ∗∗∗
>
> [A]ppellant contends that the prosecutor's race neutral explanation for excusing Coulter from the jury is not supported by the record.

7

> On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error. *Hernandez v. New York*, 500 U.S. at 364-366. . . . (Holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province'"). *Rice v. Collins*, 548 U.S. at 338. . . .
>
> In the case at bar, appellant does not offer any further explanation to make his prima facie case as required in the first step of the *Batson* test. Appellant did not specifically refer to any statements in the record that were made by the prosecutor that would indicate that the challenge was discriminatory, did not point to a pattern of discrimination and did not point to specific questions in voir dire that would indicate a discriminatory motive. Moreover, even if appellant had met his prima facie burden to go forward on the challenge, the prosecutor gave a race neutral reason for using a peremptory challenge against the juror.
> Accordingly, we find that this issue raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal. . . .

*Exhibit 18 to Motion to Dismiss*.

Nearly forty years ago, the United States Supreme Court reiterated that the right to counsel guaranteed by the Sixth Amendment to the U.S. Constitution is the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a complaint of ineffective assistance of counsel, a defendant must meet the now-familiar two prong *Strickland* test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. The Supreme Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Put plainly, "[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

8

assistance. . . ." *Id*. Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 692. Rather, a defendant must demonstrate prejudice to prevail on a claim of ineffective assistance of counsel. *Id*. at 693. To do so, a defendant must establish that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a defendant must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that she has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey,* 469 U.S. 387, 396–97 (1985). The Court of Appeals for the Sixth Circuit has identified the following considerations that the Court should take into account in determining whether counsel on direct appeal performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
>
> B. Was there arguably contrary authority on the omitted issues?
>
> C. Were the omitted issues clearly stronger than those presented?
>
> D. Were the omitted issues objected to at trial?
>
> E. Were the trial court's rulings subject to deference on appeal?
>
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> G. What was appellate counsel's level of experience and expertise?
>
> H. Did the petitioner and appellate counsel meet and go over possible issues?

> I. Is there evidence that counsel reviewed all the facts?
>
> J. Were the omitted issues dealt with in other assignments of error?
>
> K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428.  The Court will consider the merits of Petitioner's underlying claim in order to determine whether Petitioner can establish the denial of the effective assistance of counsel.

In determining whether the prosecution unconstitutionally exercised a peremptory challenge to excuse a potential juror based on race,

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id*., at 96–97, 106 S.Ct., at 1722–1723. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id*., at 97–98, 106 S.Ct., at 1723–1724. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id*., at 98, 106 S.Ct., at 1723.

*Hernandez v. New York*, 500 U.S. 352, 358 (1991).

> In evaluating the race neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law. A court addressing this issue must keep in mind the fundamental principle that "official action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . .  Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 264–265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see also Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 2047, 48 L.Ed.2d 597 (1976). " 'Discriminatory purpose' . . . implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable

> group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote and citation omitted); *see also McCleskey v. Kemp*, 481 U.S. 279, 297–299, 107 S.Ct. 1756, 1769–1770, 95 L.Ed.2d 262 (1987).
>
> A neutral explanation in the context of our analysis . . . means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Hernandez,* 500 U.S. at 360–61.

The record reflects that during *voir dire*, John Coulter, a prospective juror, stated that he had previously served as a juror in Municipal Court. *Trial Transcript*, Vol. I, Doc. No. 6-2, PageID# 275. That case involved interference with police, in which the jury found the defendant guilty. PageID# 308-09. Coulter had been called to jury duty several times since he had moved to Licking County. He felt like he was being picked on because his wife also had been called. PageID# 309. They were called for jury duty every other year. *Id*.

> MR. WALTZ: Do you, in all seriousness, do you feel that you're being picked on, though?
>
> MR. COULTER: Yeah. I don't understand how my wife and I both will be called every other year for jury duty. I just don't understand it. . . . I mean, all the people in Licking County, you know.

PageID# 310. Coulter denied being unable to remain fair and impartial in this case. PageID# 310-11.

The prosecutor stated as follows when requesting Coulter to be removed:

> I hate to do this, because I know it's going to look bad, but I'm going to strike Mr. Coulter. Just for the record, because he's African-American, I'll put on the record my reasons why. I know the Court hasn't asked yet, and I feel bad doing this, because I think I've only struck one other African-American juror in ten

11

> years, but the fact that he felt, he honestly felt, he was being treated unfairly sort of scared me the fact that in the way he talked about the other, some of the other cases, he seemed that he did not want to be here, and I think that that's just clear from his demeanor there, but I mean, he honestly did get – thought he was being treated unfairly even though I tried to explain to him that it was how jurors are selected.
>
> \*\*\*
>
> [Defense counsel]:  I'm going to object to that, because he's the only African-American on this jury, and I think it's unfair the single African-American to be struck from this jury.
>
> COURT:  He's provided a race neutral explanation.  He did explain that he thought that he and his wife had been called more times than – he indicated he couldn't understand why they get called so frequently.
>
> [Defense counsel]:  I think he could overcome that.  If he was asked if he could overcome that, he probably could.
>
> COURT:  Well, it's not an issue of whether or not it's he could be fair and impartial.  It's an issue of whether or not the State can provide a race neutral rationale.

PageID# 349-50.

Thus, the prosecutor used a peremptory challenge to strike Coulter, a prospective African-American from the jury.  He thereafter gave a facially race-neutral explanation for his request. *See Purkett v. Elem*, 514 U.S. 765, 767 (1995) (noting that the second step of *Batson* does not require the prosecutor to provide "an explanation that is persuasive, or even plausible.")

Under the third step of *Batson,* Petitioner has the burden of demonstrating the prosecutor's explanation was "merely a pretext for a racial motivation." *Franklin v. Anderson*, 267 F.Supp.2d 768, 784 (S.D. Ohio 2003) (quoting *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001)). "The burden of persuasion always rests with the opponent of the strike." *Id.* Moreover, "the state court's factual finding of no discrimination is presumed to be

correct." *Id.* (citing *Purkett v. Elem,* 514 U.S. at 769) (other citations omitted); *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (quoting *Hernandez*, 500 U.S. 352, 367 (1991) (other citations omitted).

> [W]here *"[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, ... habeas review ... does not sufice to supersede the trial court's credibility determination."* Rice, 546 U.S. at 341–42, 126 S.Ct. 969, 163 L.Ed.2d 824 (emphasis added). *Cf. Uttecht v. Brown*, 551 U.S. 1, 127 S.Ct. 2218, 2224, 167 L.Ed.2d 1014 (2007) (according deference to the state trial court's decision to excuse a prospective juror for cause in a death penalty case).

*Braxton v. Gansheimer*, 561 F.3d 453, 463 (6th Cir. 2009). Petitioner has failed to meet his burden of establishing discriminatory intent. Despite his argument to the contrary, the fact that the prosecutor did, or did not, attempt to remove other potential jurors who indicated that they also could be fair and impartial, or whom Petitioner contends may have been biased against the defendant, does not reflect any discriminatory intent.

> It is well established that a *Batson* violation may be shown by disparate treatment of white and minority jurors—that is, if a "side-by-side comparisons of some black [potential jurors] who were struck and white ones who were not" shows that the only material distinction between the removed black and the retained white individuals is their race.

*United States v. Torres–Ramos*, 536 F.3d 542, 559 (6th Cir. 2008) (citing *Miller–El v. Dretke*, 545 U.S. at 244–45); *United States v. Odeneal*, 517 F.3d 406 (6th Cir. 2008). This Court is not persuaded that Petitioner has met this burden here. Petitioner does not refer to, and the record fails to reflect, any other potential jurors who exhibited a hesitancy to serve as a juror in the case because they had been treated unfairly in being called to serve jury duty too frequently. The record contains no evidence of disparate treatment between Mr. Coulter and non-minority venire

members. The record fails to reflect Petitioner has met the standard set forth by 28 U.S.C. § 2254(d) to warrant federal habeas corpus relief.

Claim one is without merit.

**Claim Two**

In claim two, Petitioner asserts he was denied effective assistance of appellate counsel because his attorney failed to raise on appeal a claim of denial of effective assistance of trial counsel based on his attorney's failure to file a subpoena a surveillance video. The state appellate court addressed this claim as follows:

> Appellant. . . contends that he was denied effective assistance of counsel. Specifically, appellant contends that counsel did not subpoena videotape surveillance footage from the Flying J.
>
> Nothing in the record or in appellant's motion verifies that surveillance video of the transaction ever existed. In any event, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel. . . . When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. . . .
>
> A defendant has no constitutional right to determine trial tactics and strategy of counsel. . . . Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. . . .
>
> The decision of whether to present videotape surveillance footage showing the criminal act for the jury to view is a strategic decision to be made by counsel. Trial counsel may have concluded that such a demonstration would have proven that appellant committed the crime thereby prejudicing his defense.

*Exhibit 17 to Motion to Dismiss*, PageID #217-218.

Nothing in the record supports Petitioner's allegation that footage of a videotape would have assisted the defense. Petitioner therefore cannot establish he was denied effective assistance of counsel on this basis.

Claim two is without merit.

**Claim Three**

In claim three, Petitioner asserts he was denied effective assistance of counsel because his attorney failed to subpoena his co-defendant to impeach testimony of the confidential informant who testified against him at trial. The state appellate court rejected this claim in relevant part as follows:

> [A]ppellant contends that trial counsel was ineffective in failing to subpoena his co-defendant to impeach the confidential informant. Specifically, appellant maintains that the confidential informant lied during his testimony that he had no contact with appellant's wife.
>
> A review of the transcript submitted by appellant in support of his claim fails to demonstrate that Fister lied to the grand jury to get "Mrs. Carr" indicted.
>
> Accordingly, we find that this issue raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" . . . .

PageID# 219. Again, Petitioner has failed to establish denial of the effective assistance of counsel under the two-prong *Strickland* test. Nothing in the record supports his contention that the confidential informant lied or that he was prejudiced by counsel's failure to call the co-defendant as a defense witness.

Claim three is without merit.

**RECOMMENDED DISPOSITION**

**WHEREUPON,** the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss*, Doc. No. 6, be **GRANTED**, and that this action be **DISMISSED.**

**PROCEDURE ON OBJECTIONS**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston  Deavers
United States Magistrate Judge